742 A.2d 611 (2000)
327 N.J. Super. 44
Sajid Rasul MODAN, Plaintiff-Respondent/Cross-Appellant,
v.
Akefeen Baig MODAN, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 30, 1999.
Decided January 12, 2000.
*612 Needell, Siekerka & Castellani, Trenton, for defendant-appellant/cross-respondent (Michele N. Siekerka, on the brief).
George G. Gussis, New Brunswick, for plaintiff-respondent/cross-appellant.
Before Judges PRESSLER, KIMMELMAN and ARNOLD.
The opinion of the court was delivered by KIMMELMAN, J.A.D.
This is an appeal by defendant from an order entered May 15, 1998, which denied her motion to vacate a default judgment of divorce obtained by plaintiff on March 12, 1998. Plaintiff cross-appeals from that part of the May 15, 1998, order which (1) denied his request that defendant pay him $1300 pursuant to a provision in the judgment of divorce providing for such payment to be made if defendant sought to reopen the matter and (2) denied his request for counsel fees incurred in connection with defendant's application to vacate the judgment of divorce. We reverse the denial of defendant's motion to vacate and thus find it unnecessary to consider plaintiffs cross-appeal.
The parties were married in a Muslim religious ceremony on December 30, 1995, and they took up residence in the Township of North Brunswick. The marriage was short-lived and unhappy for both parties. They separated on January 16, 1997, and thereafter plaintiff brought defendant to her brother's home in New York. Plaintiff then retained an attorney in an attempt to work out the terms of a property settlement agreement but defendant, nevertheless, departed for Pakistan.
When property settlement negotiations failed, plaintiff's attorney corresponded with defendant's attorney to determine if defendant's attorney would be willing to accept service of the complaint for divorce which was being drafted. Defendant's attorney refused and certified that she was specifically not authorized to accept service and that the complaint would instead have to be served on defendant in Pakistan.
On April 1, 1997, plaintiff filed his complaint for divorce and in paragraph four thereof alleged that defendant resided at 6 Sunflower Court, Coram, New York. Plaintiff knew that such address was defendant's mother's residence. He later contended that attempts to serve defendant at that address were not successful. According to plaintiff's attorney's secretary's verification filed on November 17, 1997, a copy of the complaint was sent to the mother's address both by certified and regular mail on October 6, 1997. Only the certified mail was returned undelivered.
We are troubled by plaintiff's allegation in the complaint that defendant resided at her mother's address in view of defendant's assertion that plaintiff knew that she had returned to Pakistan. It seems obvious, judging from telephone calls made from Pakistan by defendant to plaintiff and from several e-mails sent by defendant to plaintiff in April 1997, that plaintiff knew of defendant's move to Pakistan. We may accept plaintiff's argument that he was not aware of defendant's exact address in Pakistan, but from the copies of the e-mail messages sent to him which are in the record, it is apparent that plaintiff was aware of at least an e-mail address in Pakistan where defendant could be reached.[1]
Defendant's counsel's certification also contains a copy of a letter dated March 3, 1997, to her from plaintiff's counsel indicating that plaintiff advised him that defendant *613 had called plaintiff from Pakistan. Thus, it appears that plaintiff's allegation in the complaint filed almost a month later on April 1, 1997, that defendant resided in Coram, New York was not accurate. He well knew that she had not gone back to Pakistan merely for a visit. Rather, defendant went home and was waiting, according to her e-mails, for plaintiff to accept her back as his wife.
On or about July 31, 1997, in an affidavit of diligent inquiry submitted pursuant to R. 4:4-5(c)(2) by plaintiff in support of his motion for an order for publication, plaintiff stated that when defendant left their marital abode she went to live in Coram, New York. But in the same affidavit, he admitted that she had called him several times from Pakistan although he did not "know whether she is still in Pakistan visiting or what...."
An affidavit of diligent inquiry is required to disclose the efforts made to ascertain the defendant's whereabouts before seeking an order for publication. Plaintiff did not mention in his affidavit of diligent inquiry that he had received e-mails from defendant and that he knew of an e-mail address where defendant might be reached in Pakistan. On October 6, 1997, plaintiff obtained an order dispensing with substituted service and an order for publication pursuant to R. 4:4-5.
R. 4:4-5(c) requires that in addition to publication, a notice in the form of a summons be also sent by mail to the defendant's residence or the place where the defendant usually receives mail if such place be known. This requirement exists because "[s]ervice by publication is the mode of service least calculated and least likely to result in notice to a party and rarely, in fact, does." Camden County Bd. of Soc. Serv.'s v. Yocavitch, 251 N.J.Super. 24, 29, 596 A.2d 769 (Ch. Div.1991). By reason of this requirement, we are convinced that plaintiff's affidavit of diligent inquiry and his failure to notify plaintiff by e-mail did not comply with the Rule.
Before permitting service of process by publication, virtually every jurisdiction requires a diligent inquiry be made as to the whereabouts of the defendant. This year, the Nevada Supreme Court recognized that "there is no objective, formulaic standard for determining what is, or is not, due diligence." Abreu v. Gilmer, 985 P.2d 746, 749 (Nev.1999). Instead, the court stated, "due diligence is measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant." Ibid. In accord with this perspective, the California Court of Appeal has stated "the showing of diligence in a given case must rest on its own facts and no single formula nor mode of search can be said to constitute due diligence in every case." Kott v. Superior Ct. of Los Angeles County, 45 Cal.App.4th 1126, 53 Cal.Rptr.2d 215, 221 (1996) (internal quotation marks and citation omitted). Likewise, North Carolina's Court of Appeals has held that "determination [of due diligence] in each case is based upon the facts and circumstances thereof." Barclays American/Mortgage Corp. v. BECA Enterprises, 116 N.C.App. 100, 446 S.E.2d 883, 886 (1994).
In determining the outer limits of what constitutes due diligence, the Washington Court of Appeals has stated that "a plaintiff need not exhaust all conceivable means of personal service before service by publication is authorized. A plaintiff need only follow up on that information possessed by plaintiff which might reasonably assist in determining defendant's whereabouts." Carson v. Northstar Development Co., 62 Wash.App. 310, 814 P.2d 217, 221 (1991) (citations omitted). Other jurisdictions have similarly held that due diligence requires following up on information or resources possessed by or reasonably available to the plaintiff. See Kott, supra, 53 Cal.Rptr.2d at 221 ("[L]ikely sources of information ... must be searched before resorting to service by publication."). For example, North Carolina's Court of Appeals has stated that due diligence "requires a party to use all reasonably available *614 resources to accomplish service." Barclays, supra, 446 S.E.2d at 886. Meanwhile, Florida's District Court of Appeals has similarly held that "the plaintiff has the burden of showing that it reasonably employed the knowledge at its command." Southeast and Assocs. Inc. v. Fox Run Homeowners Ass'n, Inc., 704 So.2d 694, 696 (Fla.Dist.Ct.App.1997); see also Browning v. Dixon, 114 Nev. 213, 954 P.2d 741, 744 (1998).
In this case, had plaintiff been forthright and disclosed in his affidavit of diligent inquiry that he had received e-mails from defendant, and that he knew of an e-mail address where she could or might be reached, then it would have been apparent that a method was available to plaintiff for reasonably effecting actual notice to defendant in addition to the jurisdictional requirement of service by publication. See Camden County, supra, 251 N.J.Super. at 29, 596 A.2d 769. The court should have been made aware that an e-mail address was available to plaintiff. Under such circumstance, we have no doubt that the court, in addition to publication, would have required that an appropriate notice of the complaint be e-mailed to defendant so that actual notice to defendant would likely have been effected. Perhaps actual notice to defendant may not have been effected, but by attempting to notify her via e-mail, plaintiff's due diligence in making complete disclosure would have satisfied both the letter and spirit of R. 4:4-5.
By reason of the foregoing, we reverse the denial of defendant's motion to vacate the final judgment of divorce. Such ruling renders plaintiff's cross-appeal moot. Without necessarily projecting the future course of this action, it may appear to the trial court that defendant's motion to vacate the default judgment of divorce has constituted a general appearance by her in this action, notwithstanding her certification that she still resides in Pakistan. See R. 4:4-6.
Reversed.
NOTES
[1] E-mail letters in the record disclose the email address of the sender.